**KILPATRICK TOWNSEND &
STOCKTON LLP**
Lisa Pearson (LP 4916)
Robert Potter (RP 5757)
Olivia Harris (OH 1983)
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 775-8700
Facsimile: (212) 775-8800

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| COTY INC., COTY B.V., CALVIN KLEIN TRADEMARK TRUST, CALVIN KLEIN, INC., CALVIN KLEIN COSMETIC CORPORATION, VERA WANG LICENSING LLC, V.E.W., LTD., and ATE MY HEART INC., <br><br>                    Plaintiffs, <br><br>        v. <br><br> EXCELL BRANDS, LLC, <br><br>                    Defendant. | 15 Civ. _____ <br><br><br> **COMPLAINT** |

      Plaintiffs, Coty Inc., Coty B.V., Calvin Klein Trademark Trust, Calvin Klein, Inc., Calvin Klein Cosmetic Corporation, Vera Wang Licensing LLC ("VWL"), V.E.W., Ltd. ("V.E.W"), and Ate My Heart Inc. (collectively, "Plaintiffs"), by and through undersigned counsel, for their complaint, allege as follows:

## SUBSTANCE OF THE ACTION

      1.     Plaintiffs are the creators, manufacturers and distributors behind some of the most popular and instantly recognizable celebrity and designer fragrance brands in the world, including the JOOP!, CALVIN KLEIN, VERA WANG, and LADY GAGA fragrance brands.

1

2.      Defendant Excell Brands LLC ("Defendant") distributes and sells low-grade

knockoffs of Plaintiffs' fragrances in blatantly infringing packaging.  Defendant not only

employs confusingly similar trade dress on its fragrances and typically brands them with marks

confusingly similar to Plaintiffs' marks; it also prominently features copies of Plaintiffs' actual

marks under the pretext that its infringing fragrances are "versions" of the originals.  By so

doing, Defendant falsely presents its products as the same as or equivalent to Plaintiffs' prestige

products, when in reality the fragrances differ materially as to the quality, composition, and

longevity of the scent and the packaging and the safety of the product.  Indeed, Defendant's

fragrances are often more than 75% alcohol, and contain unacceptably high levels of DEHP, a

known carcinogen.

3.      By way of example, Defendant offers a EUPHRATES fragrance as its "version

of" Plaintiffs' best-selling EUPHORIA fragrance for women, in a confusingly similar bottle and

packaging:

    

**Plaintiffs' EUPHORIA Women Fragrance   Defendant's EUPHRATES Women Fragrance**

In a transparent effort to ensure that consumers will associate its copycat fragrances with the

originals, Defendant reproduces the registered trademarks EUPHORIA and CALVIN KLEIN in

text visibly larger than the surrounding words, as part of the legend "Our version of EUPHORIA

by CALVIN KLEIN" in the lower center of the packaging:



4.     Defendant also offers its inferior "versions" of numerous other popular scents manufactured and sold by Plaintiff Coty Inc. and has systematically adopted names and packaging confusingly similar to the originals, including the representative examples shown below:

 

**Defendant's OK ROCK Men Fragrance**          **Plaintiffs' CK ONE SHOCK Men Fragrance**

 

**Defendant's OK ROCK Women Fragrance**      **Plaintiffs' CK ONE SHOCK Women Fragrance**

 

**Defendant's POSSESSION Fragrance**     **Plaintiffs' OBSESSION Fragrance**

 

**Defendant's POSSESSION NIGHT Fragrance   Plaintiffs' DARK OBSESSION Fragrance**

 

**Defendant's SERENITY Women Fragrance   Plaintiffs' ETERNITY Women Fragrance**

4

 

**Defendant's INSPIRATION Fragrance**  **Plaintiffs' PRINCESS Fragrance**

  

**Defendant's CRAZY LADY Fragrance**  **Plaintiffs' LADY GAGA FAME Fragrance**

5.      Defendant has built a parasitic business and is taking a free ride on the goodwill

Plaintiffs have invested so much time, effort and money to earn.  Defendant has systematically

copied the trademarks and trade dress of Plaintiffs' best-selling fragrance brands.  It has created

the false and misleading impression that its inferior fragrances are the same as or equivalent to

Plaintiffs' originals.  Defendant's sale of these knockoffs is a deliberate effort to trade on

Plaintiffs' fame and goodwill and damage the valuable trademark rights that Plaintiffs have spent

years developing and protecting.

6.      Consumers are likely to believe erroneously that Defendant's fragrances are the

same as or equivalent to Plaintiffs' popular fragrances, and thus attribute to Plaintiffs any defect

or deficiency in Defendant's inferior fragrances.  By offering consumers materially different and

lower quality "versions" of Plaintiffs' fragrances under trademarks and in packaging that

deliberately mimics Plaintiffs' own, Defendant threatens to harm Plaintiffs' respective reputations in a manner that is irreparable, and to tarnish and blur forever the source-identifying power of their marks.

7.     Accordingly, Plaintiffs bring this action for trademark infringement under Section 32(1) of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1114(1); trade dress infringement under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); federal trademark dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); dilution under the law of New York, N.Y. GBL § 360-l; unfair and deceptive trade practices under the laws of several states, including New York, N.Y. GBL § 349; false advertising under the law of New York, N.Y. GBL § 350; and unfair competition under common law.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction under Section 39 of the Lanham Act, 15 U.S.C. § 1121, under Sections 1331, 1338(a), 1338(b) and 1367 of the Judicial Code, 28 U.S.C. §§ 1331, 1338(a), 1338(b), and 1367, and under principles of pendent jurisdiction.  This Court also has jurisdiction pursuant to 28 U.S.C. § 1332 as there is diversity between the parties and the matter in controversy exceeds, exclusive of interest and costs, the sum of seventy-five thousand dollars.

9.     This Court has personal jurisdiction over Defendant because Defendant transacts business in the State of New York and the infringing products at issue are sold within the State.

10.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(1), (b)(2), and (c)(2).

## PARTIES

11.     Coty Inc. is a corporation organized and existing under the laws of Delaware, with a principal place of business at 350 Fifth Avenue, New York, New York 10118.  Coty Inc. manufactures and distributes fragrances under its own proprietary marks and under marks owned by third parties such as Calvin Klein, V.E.W., Ate My Heart, and many others pursuant to exclusive fragrance licenses.

12.     Coty B.V. is a limited liability company organized and existing under the laws of the Netherlands, with a principal place of business at Oudeweg 147, Haarlem, 2031 CC, Netherlands.  Coty B.V., which is the wholly-owned subsidiary of Coty Inc., is the owner of the registered JOOP! and JOOP! HOMME WILD trademarks for fragrances (among other marks) in the U.S. (collectively, the "JOOP! Marks") ("Coty Inc." and "Coty B.V." together "Coty").

13.     Calvin Klein Trademark Trust ("CKTT") is a business trust organized and existing under the laws of Delaware with an address, c/o Calvin Klein, Inc., at 205 West 39th Street, New York, New York 10018.  CKTT's trustee, Wilmington Trust Company, is a Delaware corporation with a business address at Rodney Square North, 1100 North Market Street, Wilmington, Delaware 19890.  CKTT is the record owner of the registered CALVIN KLEIN and CK trademarks for apparel products and fragrances, the registered CK ONE and CK ONE SHOCK trademarks for fragrances, as well as a registered design mark for the CK ONE fragrance bottle design (among other marks) in the U.S. (collectively, the "CKTT Marks").

14.     Calvin Klein, Inc. ("CKI") is a corporation organized and existing under the laws of New York with a principal place of business at 205 West 39th Street, New York, New York 10018.  CKI, as the beneficial owner of the CALVIN KLEIN and CK trademarks for apparel products and fragrances (among other marks) in the U.S., has entered into a license agreement

7

(as to which Calvin Klein Cosmetic Corporation and Coty Inc. are currently "licensees"), for the manufacture, distribution, sale, advertisement and promotion of the CALVIN KLEIN trademark and, with its authorization, certain derivatives thereof, including, without limitation, "CK" for fragrance products.

15.     Calvin Klein Cosmetic Corporation (together with CKTT and CKI, "Calvin Klein") is a corporation organized and existing under the laws of Delaware with a principal place of business at 350 Fifth Avenue, New York, New York 10118.  Calvin Klein Cosmetic Corporation, which is indirectly owned by Coty Inc., is the owner of the registered EUPHORIA, OBSESSION, DARK OBSESSION, ETERNITY, and IN2U trademarks for fragrances, as well as registered design marks for the ETERNITY and OBSESSION fragrance bottle designs (among other marks) in the U.S. (collectively, the "CKCC Marks") (CKTT and CKCC Marks collectively, the "CALVIN KLEIN Marks"), subject to the terms of the fragrance license from CKI.

16.     V.E.W. is a corporation organized and existing under the laws of Delaware with a principal place of business at 15 East 26th Street, New York, New York 10010.  V.E.W. is the owner of the registered VERA WANG trademark for apparel products and fragrances, as well as the registered VERA WANG PRINCESS and VERA WANG LOVESTRUCK trademarks for fragrances (among other marks) in the U.S. (collectively, the "VEW Marks").

17.     VWL is a limited liability company organized and existing under the laws of Delaware with a principal place of business at 15 East 26th Street, New York, New York 10010 (together with V.E.W., "VEW").  VWL holds the exclusive worldwide rights to utilize and license the VEW Marks, and has granted Coty Inc. an exclusive license to use those marks for fragrances.

8

18.     Ate My Heart Inc. ("Ate My Heart") is a corporation organized and existing under the laws of California with an address c/o Gelfand, Rennert and Feldman, L.L.P., 1880 Century Park East, Suite 1600, Los Angeles, California 90067.  Ate My Heart is the owner of certain federally registered marks including LADY GAGA and GAGA which collectively cover a variety of music and related entertainment services, fashion and related accessories, and printed matter.  In addition, Ate My Heart owns trademark rights in LADY GAGA FAME for fragrances, among other things, by reason of common law use and its U.S. application therefor (all of the foregoing, collectively, the "LADY GAGA Marks").

19.     Upon information and belief, Excell Brands, LLC is a limited liability company organized and existing under the laws of New Jersey with places of business at 295 Durham Avenue, Suite C, South Plainfield, New Jersey 07080 and 3 Independence Way, Suite 114, Princeton, New Jersey 08540.  Excell Brands, LLC sells fragrances and other products to retailers and/or other distributors, and transacts business in this judicial district and throughout the United States.

## FACTS SUPPORTING PLAINTIFFS' REQUESTED RELIEF

PLAINTIFFS' FRAGRANCES

20.     Calvin Klein and Vera Wang are two of the most influential and successful fashion houses in the world, each earning over $1 billion in revenue annually, and both the recipients of Council of Fashion Designers of America lifetime achievement awards (in 2001 and in 2014, respectively).

21.     Lady Gaga is one of the most successful and highly visible entertainment and recording artists in the world, having sold tens of millions of records worldwide, obtained endorsements from many popular brands, and won five Grammy awards, among many others.

22.     Founded in 1904, Coty is one of the world's leading beauty companies.  Coty manufactures, distributes, and sells its highly successful fragrances under its own proprietary marks, including the JOOP! Marks, and pursuant to exclusive fragrance licenses with Calvin Klein, VEW, Ate My Heart and many others (collectively, "Plaintiffs' Fragrances").

23.     Plaintiffs' Fragrances enjoy widespread renown for their prestige and high quality, and have become some of the most recognized, respected, and highly successful fragrance lines in the world.

24.     Plaintiffs' Fragrances have been distributed in interstate commerce throughout the U.S., including in this judicial district, for a number of years.  Calvin Klein has licensed fragrances under its CK and CALVIN KLEIN brands for over 35 years; Coty (and/or its predecessor-in-interest) has offered fragrances under the JOOP! brand for over 20 years; VEW has licensed fragrances under the VEW Marks for over ten years; and in 2012, Ate My Heart launched the highly successful LADY GAGA FAME fragrance.

25.     Each of Plaintiffs' Fragrances is identified and distinguished by the use of both a house mark, such as JOOP!, CALVIN KLEIN (or CK), VERA WANG, and LADY GAGA ("Plaintiffs' House Marks"), and an individual designation, such as HOMME, EUPHORIA, ONE, SHOCK, OBSESSION, DARK OBSESSION, ETERNITY, ETERNITY AQUA, IN2U, PRINCESS, LOVESTRUCK, and FAME.  All of the foregoing marks are collectively referred to herein as "Plaintiffs' Marks," and the various fragrances sold under each of Plaintiffs' House Marks  are collectively referred to herein as "JOOP! Fragrances," "CALVIN KLEIN Fragrances," "VEW Fragrances," and "LADY GAGA Fragrances," respectively.

26.     Plaintiffs sell their fragrances at thousands of retail locations in the U.S. alone, as well as on the Internet, and have spent tens of millions of dollars advertising, marketing, and

promoting Plaintiffs' Marks to the consuming public, reaching millions of people annually in the U.S.  As a result, Plaintiffs' Fragrances are among the top-selling lines in the U.S.  By virtue of Plaintiffs' exclusive and extensive use of Plaintiffs' Marks for their high-quality products and services, Plaintiffs' Marks have acquired enormous value and are well-recognized as source identifiers of Plaintiffs' Fragrances.  Moreover, Plaintiffs' House Marks have all become famous among the consuming public, as have certain of the product designations.

27.     In addition to the common law rights Plaintiffs have developed through use of Plaintiffs' Marks, Plaintiffs own various U.S. trademark registrations and applications for their respective marks covering entertainment services (in the case of LADY GAGA) and apparel products (in the case of the fashion houses), as well as fragrances and other goods and services. A schedule of representative registrations and applications for Plaintiffs' Marks, all of which are valid, subsisting, and in full force and effect, is attached as Exhibit A.  Moreover, those registrations that are incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065, are conclusive evidence of the registrant's ownership of and exclusive right to use the registered marks in commerce on or in connection with all of the goods identified in the registrations, as provided by Section 33(b) of the Lanham Act, 15 U.S.C. § 1115(b).

28.     Plaintiffs also own trade dress rights in the distinctive packaging of the fragrance products bearing their respective marks, and the marks for which they have an exclusive license, including without limitation the trade dress of the genuine Plaintiffs' Fragrances depicted in Paragraphs 3-4 above (collectively, "Plaintiffs' Trade Dress").

(a)     The trade dress of Coty's JOOP! HOMME fragrance is depicted below (the "JOOP! HOMME Trade Dress"):

11



The JOOP! HOMME Trade Dress is characterized by: (i) a rectangular bottle with rounded edges; (ii) with clear glass through which the magenta hue of the fragrance is visible; (iii) a dark purple mushroom-shaped cap; (iv) teal lettering on both the outer carton and fragrance bottle; (v) the house mark displayed in all uppercase letters on both the outer carton and fragrance bottle; (vi) the product name displayed in smaller uppercase letters under the house mark on both the outer carton and fragrance bottle; and (vii) an outer carton that fades from a dark to light magenta hue.

        (b)     The trade dress of Calvin Klein's EUPHORIA women's fragrance is depicted below (the "EUPHORIA WOMEN Trade Dress"):



The EUPHORIA Women Trade Dress is characterized by: (i) a squat bottle with curved contours; (ii) with clear glass through which the amethyst hue of the fragrance is visible; (iii) a rectangular silver cap; (iv) a rich cassis-colored outer carton with a matte, satin finish and silver

lettering; and (v) the product name displayed in all lowercase letters on both the outer carton and fragrance bottle.

(c)     The trade dress of Calvin Klein's EUPHORIA men's fragrance is depicted below (the "EUPHORIA MEN Trade Dress"):



The EUPHORIA Men Trade Dress is characterized by: (i) a square glass bottle; (ii) a wide rectangular cap; (iii) a rich dark purple-colored outer carton with a matte, satin finish and silver lettering; and (iv) the product name displayed in all lowercase letters on both the outer carton and fragrance bottle.

(d)     The trade dress of Calvin Klein's CK ONE fragrance is depicted below (the "CK ONE Trade Dress"):



The CK ONE Trade Dress is characterized by: (i) a frosted clear glass bottle in the shape of a flask; (ii) a silver cap; (iii) the house mark displayed in Calvin Klein's standard logo lettering in simple large black typeface on the center portion of both the outer carton and fragrance bottle;

(iv) the product name displayed in all lowercase letters under the house mark on the outer carton; and (v) an off-white-colored outer carton.

(e)    The trade dress of Calvin Klein's CK ONE SHOCK men's and women's fragrances is depicted below (the "CK ONE SHOCK Trade Dress"):

 

The CK ONE SHOCK Trade Dress is characterized by: (i) an opaque white (women's fragrance) or black (men's fragrance) bottle in the shape of a flask; (ii) a white (women's fragrance) or black (men's fragrance) cap; (iii) the house mark displayed in Calvin Klein's standard logo lettering in simple typeface on the center portion of both the outer carton and fragrance bottle; and (iv) the product name displayed in all uppercase letters in neon pink (women's fragrance) or neon green (men's fragrance) graffiti typeface under the house mark on the center portion of both the outer carton and fragrance bottle.

(f)    The trade dress of Calvin Klein's OBSESSION fragrance is depicted below (the "OBSESSION Trade Dress"):



14

The OBSESSION Trade Dress is characterized by: (i) an oval-shaped bottle; (ii) with clear glass through which the amber hue of the fragrance is visible; (iii) a rounded brown cap; (iv) brown lettering on both the outer carton and fragrance bottle; (v) an off-white colored outer carton; and (vi) the product name displayed in all uppercase letters (with the first letter in a slightly larger typeface) on both the outer carton and fragrance bottle.

(g)   The trade dress of Calvin Klein's DARK OBSESSION fragrance is depicted below (the "DARK OBSESSION Trade Dress"):



The DARK OBSESSION Trade Dress is characterized by: (i) an oval-shaped bottle with a matte, opaque finish; (ii) a rounded black cap; (iii) white and grey lettering on both the outer carton and fragrance bottle; (iv) a matte black outer carton; and (v) the product name displayed in all uppercase letters on both the outer carton and fragrance bottle.

(h)   The trade dress of Calvin Klein's ETERNITY men's and women's fragrances is depicted below (the "ETERNITY Trade Dress"):

 

The ETERNITY Trade Dress is characterized by: (i) a rectangular bottle with rounded (men's fragrance) or hard (women's fragrance) edges; (ii) with clear glass through which the light gold hue of the fragrance is visible; (iii) a "t"-shaped (women's fragrance) silver cap; (iv) an off-white (women's) or grey (men's) outer carton; and (v) the product name displayed in all uppercase letters on both the outer carton and fragrance bottle.

   (i)  The trade dress of Calvin Klein's ETERNITY AQUA fragrance is depicted below (the "ETERNITY AQUA Trade Dress"):



The ETERNITY AQUA Trade Dress is characterized by: (i) a square bottle with rounded edges; (ii) with clear glass through which the blue hue of the fragrance is visible; (iii) a silver cap; (iv) a blue outer carton; and (v) the product name displayed in all uppercase letters on both the outer carton and fragrance bottle.

   (j)  The trade dress of Calvin Klein's CK IN2U fragrance is depicted below (the "CK IN2U Trade Dress"):



The CK IN2U Trade Dress is characterized by: (i) a cylindrical bottle with a tapered neck; (ii) with partially clear glass and partially opaque white glass with cut-out lettering details, through which the pale gold hue of the fragrance is visible; (iii) a white and gold cap; (iv) a metallic gold outer carton with yellow lettering; (v) the house mark displayed in Calvin Klein's standard logo lettering and the product name displayed in all uppercase letters in simple typeface on both the outer carton and fragrance bottle; and (vi) the product name displayed in all uppercase letters vertically from the top down on the outer carton.

(k)     The trade dress of VEW's VERA WANG PRINCESS fragrance is depicted below (the "PRINCESS Trade Dress"):



The PRINCESS Trade Dress is characterized by: (i) a heart-shaped bottle with dark lettering; (ii) with clear glass through which the purple hue of the fragrance is visible; (iii) a cap adorned with a decorative gold crown; (iv) a pink outer carton with an image of a purple heart outlined in gold and using gold lettering; (v) the house mark displayed in all uppercase letters inside the purple heart on the outer carton; and (vi) the product name displayed in sentence case written in script on the center portion of both the outer carton and fragrance bottle.

(l)     The trade dress of VEW's VERA WANG LOVESTRUCK fragrance is depicted below (the "LOVESTRUCK Trade Dress"):



The LOVESTRUCK Trade Dress is characterized by: (i) a rectangular bottle with pink lettering; (ii) with clear glass through which the light purple hue of the fragrance is visible; (iii) a cap adorned with a purple floral bouquet; (iv) a magenta outer carton; and (v) the product name displayed in sentence case on both the outer carton and fragrance bottle.

        (m)    The trade dress of Ate My Heart's LADY GAGA FAME fragrance is depicted below (the "LADY GAGA FAME Trade Dress"):



The LADY GAGA FAME Trade Dress is characterized by: (i) a tall oval-shaped bottle appearing black (due to the black fluid inside the clear bottle); (ii) a gold claw-shaped cap; (iii) a black box with gold trim, gold lettering, and an image of the gold cap; and (iv) the house mark and product name displayed in all uppercase letters on the outer carton.

        29.    Plaintiffs' Trade Dress is inherently distinctive in that the choice and arrangement of colors and graphics, in addition to the shape and size, is arbitrary, suggestive, and/or fanciful. Plaintiffs' Trade Dress has also acquired secondary meaning due to Plaintiffs' consistent use of

Plaintiffs' Trade Dress to identify Plaintiffs' Fragrances in connection with the extensive promotion and sale of such fragrances. Plaintiffs' trade dress is not functional. Consumers who encounter fragrances with Plaintiffs' distinctive Trade Dress immediately associate these fragrances with Plaintiffs' respective fragrance lines.

30.     Coty is the exclusive U.S. fragrance licensee for Plaintiffs' Marks and Plaintiffs' Trade Dress, as well as other marks owned by Coty's other licensors.

<u>DEFENDANT'S SALE OF INFRINGING FRAGRANCES</u>

31.     In a deliberate effort to trade on Plaintiffs' goodwill and the overwhelming success of Plaintiffs' Fragrances, Defendant is selling blatant knockoffs marketed as "versions of" Plaintiffs' trademarked goods (Defendant's "Infringing Fragrances"). These Infringing Fragrances include, without limitation: (1) JUMP! POUR HOMME "our version of JOOP!"; (2) EUPHRATES "our version of EUPHORIA by CALVIN KLEIN" (men's and women's fragrances); (3) OK "our version of CK ONE by CALVIN KLEIN"; (4) OK ROCK "our version of CK ONE SHOCK by CALVIN KLEIN" (men's and women's fragrances); (5) POSSESSION "our version of OBSESSION by CALVIN KLEIN"; (6) POSSESSION NIGHT "our version of DARK OBSESSION by CALVIN KLEIN"; (7) SERENITY "our version of ETERNITY by CALVIN KLEIN" (men's and women's fragrances); (8) SERENITY AQUA "our version of ETERNITY AQUA by CALVIN KLEIN"; (9) BE4U "our version of CK IN2U by CALVIN KLEIN"; (10) INSPIRATION "our version of VERA WANG PRINCESS"; (11) LOVESTORY "our version of LOVESTRUCK by VERA WANG"; and (10) CRAZY LADY "our version of LADY GAGA FAME." Upon information and belief, Defendant is also offering for sale and selling other Infringing Fragrances. Defendant is selling its Infringing Fragrances through third-party websites accessible to consumers in this district, and Plaintiffs' investigators have

purchased a number of Defendant's Infringing Fragrances from these websites, shipped to addresses in Manhattan, as well as from Strawberry and Jack's World retail stores in Manhattan.

32.    Instead of investing its own time and money in consumer research, product development, and branding and marketing costs, Defendant takes a free ride on Plaintiffs' investment by offering for sale cheap imitations of the most popular and successful fragrance products on the market today.  Upon information and belief, Defendant is intentionally targeting Plaintiffs' customers and prospective customers by offering lower-priced substitutes that supposedly share the same material characteristics as Plaintiffs' Fragrances, but in fact are merely cheap imitations.

33.    Defendant is intentionally capitalizing on the success and commercial magnetism of Plaintiffs' Marks and, because Defendant's Infringing Fragrances are materially different than Plaintiffs' Fragrances, is doing so in a manner that deceives the public.  Defendant markets its Infringing Fragrances as "versions of" Plaintiffs' Fragrances, shamelessly copies Plaintiffs' Trade Dress, identifies its products with marks that are variants of Plaintiffs' Marks, and prominently displays one or more of Plaintiffs' Marks directly on the front of its infringing boxes, as shown in the example below:



34.     The side by side comparison of Plaintiffs' and Defendant's fragrances included in Exhibit B attached hereto reveals the egregious extent of Defendant's trademark and trade dress infringement.

35.     In addition to its prominent display of Plaintiffs' Marks on the front of its packaging, Defendant includes an ineffectual disclaimer on certain of its fragrances.  These disclaimers appear on the back of the packaging, and in lettering that de-emphasizes the disclaimer and instead highlights Plaintiffs' Marks.  On Defendant's infringing EUPHRATES fragrance for women, for example, lettering on the back of the box—using larger fonts for the marks and a smaller font for the rest—reads, in the manner depicted below:



A "disclaimer" of this sort, if even seen by consumers, is as or more likely to exacerbate confusion than it is to dispel it.  In any event, because the disclaimer is on the back of the outer packaging, it does nothing to mitigate initial interest confusion among consumers initially drawn to the marks and dress on the front of Defendant's packaging, nor does it correct post-sale confusion among consumers who see only the bottle of Defendant's Infringing Fragrances.

36.     Defendant's Infringing Fragrances are likely to deceive, confuse and mislead purchasers and prospective purchasers into believing that these unlicensed and unauthorized products are either offered or authorized by Plaintiffs, when in fact they are not.  Consumers perceiving a defect, lack of quality, or any other irregularity in Defendant's Infringing

Fragrances may well ascribe these deficiencies to Plaintiffs, tarnishing their reputations irreparably.

37.     Defendant's Infringing Fragrances are by no means equivalent to Plaintiffs' Fragrances, and in fact differ in a number of material respects, including scent, formulation, longevity, and the presence of potentially unsafe levels of certain ingredients.

38.     For example, Defendant's EUPHRATES fragrance for women has a metallic top-note, lacks the richness, warmth, and fullness of Plaintiffs' EUPHORIA fragrance for women, and has an overbearing note of cheap musk.  In addition, the ingredients used by Defendant differ from those used by Plaintiffs.  Defendant's EUPHRATES fragrance for women is not only missing certain key and expensive ingredients used in Plaintiffs' EUPHORIA fragrance for women, but also contains certain ingredients that are not in Plaintiffs' EUPHORIA fragrance for women at all, including Linalyl Formate, Solutol, Phenyl Ethyl Acetate, Alpha Methyl Ionone Caryophyllene Beta, Iso E Super, Patchouli Oil, and DEP.  Defendant's EUPHRATES fragrance for women contains less than a quarter of the amount of the essential oils and more than twice the amount of water of EUPHORIA for women, which means that the scent of Defendant's Infringing Fragrances will not last as long on the wearer's skin.  Further, Defendant's Infringing Fragrances contain as much as 75% alcohol (which makes them more flammable and likely to dry or irritate the skin), and contain high levels of DEHP, a known carcinogen (*see* http://www.epa.gov/ttnatw01/hlthef/eth-phth.html).

39.     The health risks associated with high levels of DEHP are so serious that state statutes have been enacted in order to regulate its presence in consumer products.  For example, California's Proposition 65, the Safe Drinking Water and Toxic Enforcement Act of 1986, requires the Governor to publish, at least annually, a list of chemicals known to the state to cause

cancer or reproductive toxicity and prohibits persons and entities from "knowingly and intentionally expos[ing] any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual." *See* Cal. Health & Saf. Code § 25249.5 *et seq*. The current list of chemicals, published on August 25, 2015, includes DEHP. *See* http://www.oehha.org/prop65/prop65_list/files/ P65single082515.pdf. Proposition 65 applies to all consumer products and the required warning "may be provided by general methods such as labels on consumer products." *See* Cal. Health & Saf. Code § 25249.11(f). Defendant's Infringing Fragrances contain no such warning.

40. Defendant's conduct is intentionally fraudulent, malicious, willful and wanton.

## FIRST CLAIM FOR RELIEF
## FOR TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT
## (15 U.S.C. § 1114)

41. Plaintiffs repeat and re-allege each and every allegation set forth in paragraphs 1 through 40 above, and incorporate them herein by reference.

42. Coty B.V. owns federal trademark registrations for the JOOP! Marks, Calvin Klein owns federal trademark registrations for the CALVIN KLEIN Marks, V.E.W. owns federal trademark registrations for the VEW Marks, and Ate My Heart owns federal trademark registrations for the LADY GAGA and GAGA marks (collectively, "Plaintiffs' Federally Registered Marks").

43. Defendant's unauthorized advertising, distribution, and sale of Infringing Fragrances bearing Plaintiffs' Federally Registered Marks, or confusingly similar variants thereof, is likely to cause confusion, mistake or deception as to the source or sponsorship of these products.

44.     As a result of Defendant's unauthorized advertising, distribution, and sale of Infringing Fragrances bearing Plaintiffs' Federally Registered Marks, or confusingly similar variants thereof, the public is likely to believe, erroneously, that Defendant's goods have been manufactured and/or approved by Plaintiffs and are subject to Plaintiffs' quality control measures.

45.     Defendant's unauthorized advertising, distribution, and sale of Infringing Fragrances bearing Plaintiffs' Federally Registered Marks, or confusingly similar variants thereof, is willful, intended to reap the benefit of the goodwill of Plaintiffs, and constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

46.     The aforesaid conduct of Defendant is causing irreparable injury to Plaintiffs and to their respective goodwill and reputations, and will continue to both damage Plaintiffs and deceive the public unless enjoined by this Court.  Plaintiffs have no adequate remedy at law, injunctive relief is warranted considering the hardships between Plaintiffs and Defendant, and the public interest would be served by enjoining Defendant's sale of Infringing Fragrances.

**SECOND CLAIM FOR RELIEF**
**FOR UNFAIR COMPETITION UNDER THE LANHAM ACT**
**(15 U.S.C. § 1125(a))**

47.     Plaintiffs repeat and re-allege each and every allegation set forth in paragraphs 1 through 46 above, and incorporate them herein by reference.

48.     Plaintiffs' Marks are identified and associated in consumers' minds exclusively with Plaintiffs.  Plaintiffs' Marks are strong, highly distinctive of Plaintiffs, and entitled to the broadest scope of protection.

49.     Plaintiffs' Trade Dress is inherently distinctive in that it is arbitrary and fanciful, and is non-functional.  Moreover, it has acquired distinctiveness and has achieved secondary meaning as a source identifier for Plaintiffs' Fragrances through Plaintiffs' extensive use.

50.     Plaintiffs own all rights in Plaintiffs' Marks and Plaintiffs' Trade Dress and have never authorized Defendant to use them.

51.     Defendant's use of marks and trade dress that are identical and/or confusingly similar to Plaintiffs' Marks and Trade Dress in connection with Defendant's Infringing Fragrances is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Plaintiffs, or as to the origin, sponsorship, or approval of Defendant's Infringing Fragrances by Plaintiffs.

52.     Defendant is using Plaintiffs' Marks and Trade Dress with full knowledge that they are associated exclusively with Plaintiffs and exclusively designate Plaintiffs' Fragrances. Defendant's acts of unfair competition are willful and deliberate and with an intent to reap the benefit of the goodwill and reputation associated with Plaintiffs' Marks.

53.     By deliberately infringing Plaintiffs' Marks and Trade Dress, and by advertising its inferior fragrances as equivalent "versions" of Plaintiffs' Fragrances, Defendant seeks to capitalize unlawfully on the reputation and goodwill that Plaintiffs, at great expense, have carefully crafted with the consuming public.  Plaintiffs offer high-quality prestige fragrances supported by extensive global advertising.  By offering cheaper, inferior fragrances that suggest to consumers they are the same as or equivalent to Plaintiffs' fragrances, Defendant competes unfairly and in a manner prohibited by law.

54.     Defendant's unauthorized advertising, distribution and sale of Infringing Fragrances violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

55.     The aforesaid conduct of Defendant is causing irreparable injury to Plaintiffs and to their respective goodwill and reputations, and will continue to both damage Plaintiffs and deceive the public unless enjoined by this Court.  Plaintiffs have no adequate remedy at law.

### THIRD CLAIM FOR RELIEF
### FOR FALSE ADVERTISING UNDER THE LANHAM ACT
### (15 U.S.C. § 1125(a)(1)(B))

56.     Plaintiffs repeat and re-allege each and every allegation set forth in paragraphs 1 through 55 above, and incorporate them herein by reference.

57.     In connection with their advertising and promotion of the Infringing Fragrances, Defendant has made false or misleading descriptions of fact, or misrepresentations of fact, concerning the nature, characteristics, qualities, and origin of the Infringing Fragrances, including that the Infringing Fragrances are equivalent to Plaintiffs' Fragrances or comparable in scent and quality, when they are not.

58.     The false and misleading message communicated by the packaging of Defendant's Infringing Fragrances is that these "versions" of Plaintiffs' Fragrances are the same as or equivalent to Plaintiffs' Fragrances when in fact they are not.  This is a material misrepresentation, as the qualities and characteristics of Plaintiffs' Fragrances (including the quality, composition, longevity and safety of the scent) are significantly different from those of Defendant's Infringing Fragrances.  Defendant's advertising message is false, misleading, confusing, and deceptive.

59.     Consumers who rely on Defendant's misrepresentation that its Infringing Fragrances are the same as or equivalent to Plaintiffs' Fragrances are likely to ascribe to Plaintiffs any deficiencies perceived in Defendant's goods.   Given the inferior nature of

Defendant's Infringing Fragrances as compared to Plaintiffs' Fragrances, this false claim of equivalency threatens irreparable and ongoing harm to Plaintiffs' respective reputations.

60.     By reason of the foregoing, Defendant is in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

61.     The aforesaid conduct of Defendant is causing irreparable injury to Plaintiffs and to their respective goodwill and reputations, and will continue to both damage Plaintiffs and deceive the public unless enjoined by this Court.  Plaintiffs have no adequate remedy at law.

**FOURTH CLAIM FOR RELIEF**
**FOR TRADEMARK DILUTION UNDER THE LANHAM ACT**
**(15 U.S.C. § 1125(c))**

62.     Plaintiffs repeat and re-allege each and every allegation set forth in paragraphs 1 through 61 above, and incorporate them herein by reference.

63.     By reason of Plaintiffs' extensive advertising and use of House Marks, Plaintiffs' House Marks are distinctive and famous within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

64.     Defendant's unauthorized use of marks that are identical and/or confusingly similar to Plaintiffs' House Marks began after Plaintiffs' House Marks became famous.

65.     Defendant's unauthorized use of marks that are identical and/or confusingly similar to Plaintiffs' House Marks for fragrances is likely to dilute, does dilute, and will continue to dilute the distinctive quality of Plaintiffs' House Marks by lessening their capacity to identify and distinguish Plaintiffs exclusively as the source of goods bearing those marks and is likely to tarnish, does tarnish, and will continue to tarnish Plaintiffs' House Marks by associating them with products of inferior quality, in violation of 15 U.S.C. § 1125(c).

66.     Defendant's intentional and unauthorized use of marks that are identical and/or confusingly similar to Plaintiffs' House Marks for its own commercial business purposes is intended to and has the effect of trading on Plaintiffs' reputations and causing dilution of Plaintiffs' House Marks.

67.     The aforesaid conduct of Defendant is causing irreparable injury to Plaintiffs and to their respective goodwill and reputations, and will continue to both damage Plaintiffs and deceive the public unless enjoined by this Court.  Plaintiffs have no adequate remedy at law.

**FIFTH CLAIM FOR RELIEF**
**FOR TRADEMARK AND TRADE DRESS DILUTION UNDER NEW YORK LAW**
**(N.Y. GEN. BUS. LAW § 360-l)**

68.     Plaintiffs repeat and re-allege each and every allegation set forth in paragraphs 1 through 67 above, and incorporate them herein by reference.

69.     Plaintiffs' Marks and Trade Dress are distinctive and well-known throughout the U.S.  By reason of Plaintiffs' extensive advertising and use, Plaintiffs' Marks and Trade Dress have become distinctive source identifiers of Plaintiffs' Fragrances, and Plaintiffs' Marks and Trade Dress are associated exclusively with Plaintiffs, including by consumers in the State of New York.

70.     Defendant's unauthorized use of marks and trade dress that are identical and/or confusingly similar to Plaintiffs' Marks and Trade Dress began after Plaintiffs' Marks and Trade Dress became well-known and distinctive.

71.     Defendant's unauthorized use of marks and trade dress that are identical and/or confusingly similar to Plaintiffs' Marks and Trade Dress for fragrances is likely to dilute, does dilute, and will continue to dilute the distinctive quality of Plaintiffs' Marks and Trade Dress by lessening their capacity to identify and distinguish Plaintiffs exclusively as the source of goods

bearing those marks and trade dress and is likely to tarnish, does tarnish, and will continue to tarnish Plaintiffs' Marks and trade dress by associating them with products of inferior quality, in violation of N.Y. GEN. BUS. LAW § 360-l.

72.     Defendant's intentional and unauthorized use of marks and trade dress that are identical and/or confusingly similar to Plaintiffs' Marks and Trade Dress for its own commercial business purposes is intended to and has the effect of trading on Plaintiffs' reputations and causing dilution of Plaintiffs' Marks and Trade Dress.

73.      The aforesaid conduct of Defendant is causing irreparable injury to Plaintiffs and to their respective goodwill and reputations, and will continue to both damage Plaintiffs and deceive the public unless enjoined by this Court.  Plaintiffs have no adequate remedy at law.

### SIXTH CLAIM FOR RELIEF FOR
### UNFAIR AND DECEPTIVE TRADE PRACTICES UNDER NEW YORK LAW
### (N.Y. GEN. BUS. LAW § 349)

74.     Plaintiffs repeat and re-allege each and every allegation set forth in paragraphs 1 through 73 above, and incorporate them herein by reference.

75.     By reason of the acts set forth above, Defendant has been and is engaged in deceptive acts or practices in the conduct of a business, trade or commerce in violation of New York's General Business Law § 349, and upon information and belief the unfair and deceptive trade practices statutes of several states.

76.     The public is likely to be damaged as a result of Defendant's deceptive trade practices or acts.

77.     The aforesaid conduct of Defendant is causing irreparable injury to Plaintiffs and to their respective goodwill and reputations, and will continue to both damage the Plaintiffs and deceive the public unless enjoined by this Court.  Plaintiffs have no adequate remedy at law.

29

**SEVENTH CLAIM FOR RELIEF FOR**
**FALSE ADVERTISING UNDER NEW YORK LAW**
**(N.Y. GEN. BUS. LAW § 350)**

78.     Plaintiffs repeat and re-allege each and every allegation set forth in paragraphs 1

through 77 above, and incorporate them herein by reference.

79.     Defendant has advertised its Infringing Fragrances in an unfair and misleading

manner, in that Defendant has made statements and used words, designs, devices and

combinations thereof to indicate that Defendant's Infringing Fragrances are the same as or

equivalent to Plaintiffs' Fragrances.

80.     The aforesaid acts of Defendant constitute false advertising in the conduct of

business, trade, or commerce, or in the furnishing of any service in the State of New York in

violation of N.Y. GEN. BUS. LAW § 350.

81.     The aforesaid conduct of Defendant is causing irreparable injury to Plaintiffs and

to their respective goodwill and reputations, and will continue to both damage the Plaintiffs and

deceive the public unless enjoined by this Court.  Plaintiffs have no adequate remedy at law.

**EIGHTH CLAIM FOR RELIEF FOR**
**COMMON LAW UNFAIR COMPETITION**

82.     Plaintiffs repeat and re-allege each and every allegation set forth in paragraphs 1

through 81 above, and incorporate them herein by reference.

83.     Defendant's unauthorized advertising, distribution and sale of Infringing

Fragrances constitutes a false designation of origin and a false description or representation that

Defendant's Infringing Fragrances are authorized by Plaintiffs, and is thereby likely to confuse

consumers.

84.     Defendant is using Plaintiffs' Marks and/or Trade Dress, and/or confusingly

similar variants thereof, with full knowledge that they are associated exclusively with Plaintiffs

and exclusively designate Plaintiffs' Fragrances.  Defendant's acts of unfair competition are willful and deliberate and with an intent to reap the benefit of the goodwill and reputation associated with Plaintiffs' Marks and Trade Dress.

85.     Defendant's sale and distribution of Infringing Fragrances constitutes common law unfair competition.

86.     The aforesaid conduct of Defendant is causing irreparable injury to Plaintiffs and to their respective goodwill and reputations, and will continue to both damage Plaintiffs and deceive the public unless enjoined by this Court.  Plaintiffs have no adequate remedy at law.

**WHEREFORE**, Plaintiffs demand judgment as follows:

1.     That an injunction be issued enjoining Defendant, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, and entities owned or controlled by Defendant, and all those in active concert and participation with Defendant, and each of them who receives notice directly or otherwise of such injunction from:

a)     importing, exporting, manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting or displaying any Infringing Fragrances, and any other products that tend to deceive, mislead, or confuse the public into believing that Defendant's products in any way originate with, are sanctioned by, or are affiliated with Plaintiffs;

b)     imitating, copying, or making unauthorized use of Plaintiffs' Marks and/or Trade Dress;

c)     importing, exporting, manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting or displaying any product bearing any simulation, reproduction, counterfeit, copy or colorable imitation of Plaintiffs' Marks and/or Trade Dress;

d)       using Plaintiffs' Marks and/or Trade Dress, and/or any simulation, reproduction, counterfeit, copy or colorable imitation thereof, in connection with the importation, promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any product in such fashion as to relate or connect, or tend to relate or connect, such product in any way to Plaintiffs or to any goods sold, manufactured, sponsored, approved by or connected with Plaintiffs;

e)       using any false designation of origin or false description, or performing any act which is likely to lead members of the trade or public to believe that any product manufactured, distributed or sold by Defendant is in any manner associated or connected with Plaintiffs, or is sold, manufactured, licensed, sponsored, approved or authorized by Plaintiffs, including without limitation using the phrase "our version of" in connection with Plaintiffs' Marks;

f)       engaging in any other activity constituting unfair competition with Plaintiffs, or constituting infringement of Plaintiffs' Marks and/or Trade Dress;

g)       taking any action, including through the use of Plaintiffs' Marks and/or Trade Dress, and/or any simulation, reproduction, counterfeit, copy or colorable imitation thereof, that dilutes the unique association between Plaintiffs and their marks and trade dress, or that tarnishes the reputation or image of Plaintiffs;

h)       offering, advertising, or promoting any product as an imitation, copy, or smell-alike version of any of Plaintiffs' Fragrances;

i)       making any false representations or false descriptions of fact concerning or relating to Plaintiffs or any of Plaintiffs' Fragrances, or otherwise falsely comparing any of Defendant's Infringing Fragrances to any of Plaintiffs' Fragrances;

j)      disposing of, destroying, altering, moving, removing, concealing, tampering with or in any manner secreting any physical evidence or documents (including computer records) of any kind, including invoices, correspondence, books of account, receipts or other documentation relating or referring in any manner to the manufacture, advertising, receipt, acquisition, importation, purchase, sale, offer for sale, and/or distribution of any merchandise bearing Plaintiffs' Marks and/or Trade Dress, or any simulation, reproduction, counterfeit, copy or colorable imitation thereof;

k)      instructing, assisting, aiding or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (j) above;

2.      Directing that Defendant make available to Plaintiffs for review, inspection and copying all books, records (including all hard drives on computers used for business purposes, including servers, as well as all computer disks and back up disks) and other documents and things concerning all transactions relating to the purchase or sale of Infringing Fragrances or any other products or packaging incorporating a simulation, reproduction, counterfeit, copy or colorable imitation of Plaintiffs' Marks and/or Trade Dress and provide Plaintiffs the names, addresses and all other contact information in its possession (e.g., telephone numbers, fax numbers) for the source(s) of such products and packaging, including all manufacturers, distributors and/or suppliers;

3.      Directing that Defendant deliver to Plaintiffs' counsel for destruction at Defendant's costs all signs, products, packaging, promotional material, advertising material, catalogs and any other item that bears, contains or incorporates Plaintiffs' Marks and/or Trade Dress, and/or any simulation, reproduction, counterfeit, copy or colorable imitation thereof;

4.     Directing that Defendant recall from all distributors, retailers or other recipients any and all Infringing Products as well as all other products and packaging sold or distributed by Defendant under or in connection with Plaintiffs' Marks and/or Trade Dress, or any simulation, reproduction, counterfeit, copy or colorable imitation thereof, and, upon recall, to deliver such goods up to Plaintiffs' counsel for destruction at Defendant's cost;

5.     Requiring Defendant to account for and pay over to Plaintiffs three times the profits realized by Defendant from their infringement of the Plaintiffs' Marks and Trade Dress and its unfair competition with Plaintiffs;

6.     Awarding Plaintiffs their actual damages, trebled pursuant to 15 U.S.C. § 1117(a) and (b), arising out of Defendant's acts of willful trademark infringement;

7.     Awarding Plaintiffs their actual damages, trebled pursuant to 15 U.S.C. § 1117(a), arising out of Defendant's acts of willful trademark infringement and unfair competition;

8.     Awarding Plaintiffs their actual damages, trebled pursuant to N.Y. GEN. BUS. LAW §§ 349(h) and 350-E(3), arising out of Defendant's acts of willful deceptive trade practices and false advertising;

9.     Awarding Plaintiffs interest, including pre-judgment interest, on the foregoing sums;

10.     Awarding Plaintiffs their costs in this civil action, including reasonable attorneys' fees and expenses, pursuant to 15 U.S.C. § 1117(a);

11.     Awarding Plaintiffs exemplary and punitive damages to deter any future willful infringement as the Court finds appropriate;

12.     Directing such other action as the Court may deem appropriate to prevent the trade and public from deriving the erroneous impression that any goods or services offered,

advertised or promoted by or on behalf of Defendant are authorized by Plaintiffs or related in any way to products sold under Plaintiffs' Marks and Trade Dress or are the same as, or equivalent or comparable to, Plaintiffs' Fragrances;

13.   Directing that Defendant file with the Court and serve upon Plaintiffs' counsel within thirty (30) days after entry of judgment a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the above; and

14.   Awarding Plaintiffs such other and further relief as the Court may deem just and proper.

DATED: September 4, 2015                Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

By: _____

Lisa Pearson (LP 4916)
Robert Potter (RP 5757)
Olivia Harris (OH 1983)
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 775-8700
Facsimile: (212) 775-8800
lpearson@kilpatricktownsend.com
rpotter@kilpatricktownsend.com
oharris@kilpatricktownsend.com

*Attorneys for Plaintiffs*