```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
COTY INC., et al.,                                                      :
                                                                        :
                              Plaintiffs,                               :    15-CV-7029 (JMF)
                                                                        :
             -v-                                                        :    MEMORANDUM OPINION
                                                                        :           AND ORDER
EXCELL BRANDS, LLC,                                                     :
                                                                        :
                              Defendant.                                :
                                                                        :
------------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

In this suit, familiarity with which is assumed, Plaintiffs bring intellectual property claims against Defendant Excell Brands, LLC ("Excell") relating to the sale of certain "knock-off" versions of Plaintiffs' fragrances. Plaintiffs previously moved, pursuant to Rule 37 of the Federal Rules of Civil Procedure, for sanctions on the ground that Excell had failed to produce competent Rule 30(b)(6) witnesses. (Docket No. 72). In a Memorandum and Opinion dated December 9, 2016, the Court granted Plaintiffs' motion for sanctions, and precluded Excell from introducing certain factual testimony or documents at trial (which took place earlier this year). *See Coty Inc. v. Excell Brands, LLC*, No. 15-CV-7029 (JMF), 2016 WL 7187630, at *2 (S.D.N.Y. Dec. 9, 2016). The Court also ordered Excell to reimburse Plaintiffs for their "reasonable expenses, including attorney's fees, caused by its failure to produce adequately prepared witnesses, including the attorney's fees incurred in connection with both Rule 30(b)(6) depositions (albeit discounted to reflect the fact that Excell's witnesses were apparently prepared to provide testimony on topics other than those discussed above), preparation of Plaintiff's June 2, 2016 letter motion (Docket No. 67), and preparation of th[e sanctions] motion." *Id.* at *3

1

(internal quotation marks omitted). After counsel were unable to reach agreement on what constituted "reasonable expenses," Plaintiffs filed the instant motion seeking attorney's fees and costs. (Docket No. 101).

In determining appropriate attorney's fees, district courts in this Circuit use the "lodestar method," in which the number of hours reasonably expended is multiplied by a reasonable hourly rate. *See, e.g.*, *McDonald v. Pension Plan of the NYSA–ILA Pension Tr. Fund,* 450 F.3d 91, 96 (2d Cir. 2006) (per curiam). An attorney's hourly rate is considered reasonable when it is "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Trs. of Mason Tenders Dist. Council Welfare Fund, Pension Fund, Annuity Fund and Training Program Fund v. Stevenson Contracting Corp.,* No. 05-CV-5546 (GBD) (DF), 2008 WL 3155122, at *9 (S.D.N.Y. June 19, 2008) (alteration in original) (quoting *Blum v. Stenson,* 465 U.S. 886, 895 n.11 (1984)) (internal quotation marks omitted). Finally, "where time entries reflect excessive billing or duplicative work, a court may impose an across-the-board percentage reduction in order to achieve a reasonable fee award." *Rahman v. The Smith & Wollensky Rest. Grp., Inc.*, No. 06-CV-6198 (LAK) (JCF), 2008 WL 1899938, at *4 (S.D.N.Y. Apr. 29, 2008).

Plaintiffs here seek $51,891.75 in attorney's fees for the two Rule 30(b)(6) depositions, the June 2, 2016 letter motion, and the sanctions motion. (Docket No. 102 ("Pls.' Mem."), at 2; *see also* Pls.' Mem, Ex. A ("Plaintiffs' Fees")). Notably, Plaintiffs do not include certain costs that figure, including the time of attorneys and legal staff who assisted with discrete tasks relevant to the depositions, the parties' correspondence, and Plaintiffs' filings, but were not principally involved in the case. (Docket No. 103 ("Pearson Decl.") ¶ 21). Additionally, Plaintiffs do not include costs such as deposition transcripts or expenses associated with the

photocopying of deposition exhibits.  (*Id.*).  And finally, in calculating their total, Plaintiffs discounted the fees sought in connection with the two depositions (by 87.5% in the first case and by 35% in the second) in proportion to the number of topics on which each witness was adequately prepared.  (*Id.*).  In opposing Plaintiffs' request, Excell does not take issue with the reasonableness of Plaintiffs' counsels' rates; instead, it challenges the number of hours for which Plaintiffs seek reimbursement, on several grounds.  (Docket No 118 ("Defs.' Opp'n"), at 3-12).  The Court will address each of Excell's arguments in turn.

Excell first contends that Plaintiffs' counsels' fees are "inappropriately partner-heavy." (Defs.' Opp'n 3).  Specifically, Excell asserts that the combined 71.1 hours billed by partners Lisa Pearson and Robert Potter were excessive, particularly when compared to the 54.6 hours billed by James Faris, a senior associate.  (*Id.* at 4).  In support of this argument, Excell relies exclusively on *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 51, 57 (S.D.N.Y. 2015), in which the Court imposed an across-the-board reduction based on, among other things, "the extraordinarily partner-heavy nature" of counsel's work.  This case, however, is easily distinguished from *Beastie Boys*, as Plaintiffs' counsel did not bill "nearly 2.5 times as many partner hours as associate hours."  *Id.*  Additionally, the *Beastie Boys* Court rested its conclusion on the ground that it is "quite unusual" for partners to be deeply engaged in routine discovery issues or other such "pretrial tasks."  *Id.*  Here, unlike in *Beastie Boys*, discovery was not routine; indeed, discovery was, for the relevant period, central to the litigation.  And unlike in the typical case, discovery here also required preparing for and attending court conferences, not to mention formal motion practice, which justified more involvement from partners.

Excell also asserts that it was inappropriate for 22.7 hours of partner time to be allocated for partner Robert Potter given that he did not attend or take either of the Rule 30(b)(6)

3

depositions. (Defs.' Opp'n 5). That assertion, however, overlooks the fact that Potter performed other tasks that were highly relevant to the discovery dispute, including assisting in preparation for the deposition, following up on deficiencies in the witnesses' testimony, handling communications with opposing counsel, drafting communications to the Court in preparation for the conference on May 10, 2016, appearing at that conference, and reviewing and revising Plaintiffs' subsequent court filings. (Pearson Decl. ¶ 12). In any event, Potter's rates were significantly lower than Pearson's, as he was elevated to partner during the course of the litigation. (Pearson Decl. ¶¶ 9, 12, 13). *Cf. Adusumelli v. Steiner*, No. 08-CV-6932 (JMF), 2013 WL 1285260, at *4 (S.D.N.Y. Mar. 28, 2013) (refusing to reduce a fee request where a partner, promoted during the litigation, conducted a significant amount of legal research).

Next, Excell argues that Plaintiffs inappropriately allocated fees for unrelated and redacted tasks and that they improperly "block billed." The first claim is unpersuasive because none of the tasks identified by Excell appear to have been "unrelated." For example, Excell highlights Ms. Pearson's entry for April 18, 2016, when she billed five hours for "[p]repar[ing] for Excell depositions; email[ing] with opposing counsel concerning depositions of Excell witnesses and Coty 30(b)(6) designees" as an example of work that cannot be reasonably allocated to Excell. (Plaintiffs' Fees 4). But because Plaintiffs were unable to obtain any substantive information about Excell's operations from Wayne Hamerling or Louis Rodriguez — both of whom invoked the Fifth Amendment — they were forced to pursue these additional topics with the Rule 30(b)(6) witnesses. (See Pearson Decl. ¶ 11). Because that earlier work was only put to use during the Rule 30(b)(6) depositions, it was not unreasonable for Plaintiffs to include some minor percentage (namely, 12.5%) of the preparation for those other depositions.

4

Similarly, Excell's argument that Plaintiffs' fees should be reduced because counsel used "impermissible billing" techniques — such as block billing and redacting the portions of certain entries — falls short. (Defs.'Mem. 7). With respect to the former, although block billing is generally disfavored, "it is not prohibited as long as the Court can determine the reasonableness of the work performed." *Adorno v. Port Auth. of N.Y. & N.J.*, 685 F. Supp. 2d 507, 515 (S.D.N.Y. 2010) (internal quotation marks omitted)). And here, the Court is able to adequately assess the reasonableness of the work performed. Indeed, each of the time slots targeted by Excell contains "enough detail and specificity so as to afford reasonable confidence that the time billed was productively spent, even if it is impossible to reconstruct the precise amounts of time allocable to each specific task listed in the block entry." *Beastie Boys*, 112 F. Supp. 3d at 54. For example, it is was not unreasonable for Ms. Pearson to allocate 12.5% of her four-hour time entry for April 19, 2016 to Excell when that time was spent "[p]repar[ing] to take Bronsnick, Wayne and Diane Hamerling, 30(b)(6), and Rodriguez depositions, review[ing] related documents and organiz[ing] deposition exhibits; confer[ring] with R. Potter and J. Faris regarding the same." (Plaintiffs' Fees 4). Additionally, none of the allegedly block-billed entries was for a long period of time, further undermining the case for a reduction. *See Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 188 F. Supp. 3d 333, 343 (S.D.N.Y. 2016) (finding block billing acceptable when "the majority of the block-billed entries were for fewer than five hours"); *see also Abdell v. City of N.Y.*, No. 05–CV–8453 (RJS), 2015 WL 898974, at *4 (S.D.N.Y. Mar. 2, 2015) (finding block billing acceptable "for temporally short entries combining related tasks"). In short, because the "commingling of activities within one time entry" does not "impede[] the [C]ourt's efforts to evaluate the reasonableness of any of

5

the listed activities," *Berry v. Deutsche Bank Tr. Co. Am.*, 632 F. Supp. 2d 300, 306 (S.D.N.Y. 2009), Plaintiffs' use of block billing does not provide a basis for reducing the fee award here.

In the same vein, Plaintiffs' redactions do not provide a basis to reduce their fee request. For starters, of the seven such time entries, counsel for Plaintiffs claim that four are redacted to preserve the attorney-client privilege and work product (and indeed, three of those entries explicitly mention Coty's Global Deputy General Counsel, Joseph Conklin). (Pearson Decl. ¶ 19). Excell does not take issue with Plaintiffs' invocation of the privilege, and it is not unreasonable for Plaintiffs to have billed time dedicated to updating their clients about Excell's continued stonewalling. In each of the other three time entries at issue, meanwhile, the unredacted portions are plainly relevant and Plaintiffs seek compensation for only 12.5% of the time. (*See, e.g.*, Plaintiffs' Fees 1 ("Identify and gather additional documents needed for Rule 30b6 deposition; revise deposition outline for Rule 30b6 deposition; prepare list of questions to be asked of Rule 30b6 witness concerning Defendant's affirmative defenses, . . ."). The redactions are thus immaterial to the fees attributed to those time slots.

Next, Excell's various arguments concerning preparation for the Andrew Pfau deposition can be easily dismissed. First, it was not excessive for Plaintiffs to spend about seven hours preparing for the second Rule 30(b)(6) deposition (Plaintiffs' Fees 2, 5), given that they presumably had to review the transcript of the first Rule 30(b)(6) deposition, drill down on the topics where the first witness had been deficient, compile the relevant exhibits for those topics, and prepare for a new witness who had an entirely different role within Excell. And second, Excell's bold claim that Pfau answered a "significant majority of [the] questions" posed to him is not even a close call. (Defs.' Opp'n 12). The Court had explicitly ordered Excell to produce a witness that was prepared to testify about the noticed topics, even if that meant debriefing the

company's president or its Indian suppliers. But, as the Court noted in its decision granting Plaintiffs' motion for sanctions, "Pfau was patently unprepared to do so, answering 'I don't know' almost forty times during his two-hour deposition, always in response to questions about the noticed topics." *See Coty*, 2016 WL 7187630, at *2. His unpreparedness was punctuated by his own admission that he did "[n]ot much" to prepare for the deposition; he spoke only to Excell's trial counsel and failed to speak with either the company's president or its Indian vendors. *Id.* (alteration in original). That he may have provided cursory information on some of the noticed topics is beside the point: His deposition was largely a waste of time for Plaintiffs, and they must be compensated for that time. Accordingly, Plaintiffs' 25% discount of their fees attributable to the Pfau deposition (to reflect that Pfau was deficient on three of four topics) is reasonable.

Excell's final complaint, however, has legs. Excell claims that the number of hours Plaintiffs' counsel billed to prepare their sanctions motion — approximately thirty-five hours — was excessive. The Court agrees, particularly given that Plaintiffs' counsel had presumably researched whether sanctions were warranted when they engaged in numerous meet and confers and correspondence with Excell's counsel on the matter, argued the issue before the Court, and wrote a detailed letter motion on the topic to the Court. (Docket Nos. 65, 67). *Cf. Patino v. Brady Parking, Inc.*, No. 11-CV-3080 (AT) (DF), 2015 WL 2069743, at *4 (S.D.N.Y. Apr. 30, 2015) (finding "5.9 hours preparing and submitting Plaintiff's motion for sanctions" to be reasonable); *Rahman*, 2008 WL 1899938, at *4 (reducing counsels' compensable hours by a third because "Plaintiff's counsel devoted far more hours to the sanctions issue than was justified by the work product[, which] may have resulted in part from the fact that two attorneys worked on tasks that could easily have been handled by one"); *New Pac. Overesas Grp. (USA) Inc. v.*

7

*Excal Int'l Dev. Corp.*, No. 99-CV-2436 (DLC), 2000 WL 520661, at *1 (S.D.N.Y. Apr. 28, 2000) (concluding that "no more than twenty hours were reasonably required for the defendants to prepare this motion for sanctions" and reducing the requested fees by $4000 when the motion included "discussion of issues already briefed"); *Route Messenger Servs., Inc. v. HoltDow, Inc.*, 139 F.R.D. 311, 313 n.6 (S.D.N.Y. 1991) (reducing compensable hours when lawyers "spent in excess of 30 hours" preparing its motion for sanctions). Accordingly, the requested fees in connection with the formal sanctions motion are reduced by 33%, to $11,148.26.

For these reasons, Plaintiffs' motion for attorney's fees and costs is GRANTED in part and DENIED in part. Specifically, Plaintiffs' request for $51,891.75 in fees and costs is reduced by $5,490.94 and Plaintiffs are therefore awarded $46,400.81 in attorney's fees and costs.

The Clerk of Court is directed to terminate Docket No. 101.

SO ORDERED.

Dated: September 18, 2017
      New York, New York

_____
JESSE M. FURMAN
United States District Judge